IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DENNIS LUCKETT, | § | |
|     Plaintiff, | § | |
| | § | |
| V. | § | No. 3:25-CV-1092-G-BW |
| | § | |
| UBER TECHNOLOGIES, INC., | § | |
|     Defendant. | § | Referred to U.S. Magistrate Judge[1] |

# FINDINGS, CONCLUSIONS, AND RECOMMENDATION
# OF THE UNITED STATES MAGISTRATE JUDGE

On May 9, 2025, Defendant Uber Technologies, Inc. ("Uber") filed a Motion to Stay and Compel Arbitration (Dkt. No. 6 ("Mot.")) with supporting brief (Dkt. No. 7 ("D. Br.")) and appendix (Dkt. No. 7-1 ("D. App.")). Plaintiff Dennis Luckett filed an "Objection" to Uber's motion on May 13, 2025 (Dkt. No. 11 ("Resp.")) and, on June 3, 2025, filed another response to Uber's motion styled as "Plaintiff's Sur-Reply to Defendant's Motion to Compel Arbitration or Alternative" (Dkt. No. 13 ("Surreply")). Also before the Court is Luckett's May 13, 2025 Motion for Summary Judgment. (Dkt. No. 10.)

The undersigned recommends that the District Judge **GRANT** Uber's motion to compel arbitration, **DENY** Luckett's summary judgment motion, and **STAY** this case pending the completion of arbitration.

---

[1] This case was referred to the undersigned magistrate judge pursuant to Special Order 3-251. (*See* Dkt. No. 2.)

# I. BACKGROUND

## A. Factual Background

Luckett began driving for the rideshare service Uber more than five years ago. (*See* Dkt. No. 1-1 ("Removal App.") at 14.) Drivers who sign up to provide services through Uber must first enter into the company's Platform Access Agreement ("Uber PAA"). (D. App. 2-3.) Drivers then may enter into additional agreements with Uber or a subsidiary company depending on services they want to perform or technology platform they want to use. (D. App. 3.) They must enter into a platform access agreement with Rasier, LLC ("Rasier PAA") if they want to access the rideshare marketplace for peer-to-peer transportation service through Uber's Driver App, another with Portier, LLC ("Portier PAA") to access the marketplace for general delivery services, and yet another with Schleuder, LLC to access the marketplace for delivery services through Uber's Driver App. (D. App. 3-4.)

Luckett began providing services using the Driver App on January 25, 2020. (D. App. 4.) During the course of his relationship with Uber, he accepted the following agreements: (1) the 2022 Rasier PAA (on February 16, 2022), (2) the 2022 Portier PAA (February 23, 2022 and again on September 7, 2023), (3) the 2024 Schleuder PAA (on August 5, 2024), and (4) the 2024 Portier PAA (on August 5, 2024). (D. App. 4.) Each of these agreements contains a comprehensive arbitration agreement that begins with the following conspicuous language:

> IMPORTANT: PLEASE REVIEW THIS ARBITRATION PROVISION CAREFULLY, AS IT WILL REQUIRE YOU TO

> RESOLVE DISPUTES WITH US ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION, EXCEPT AS PROVIDED BELOW.  YOU MAY OPT OUT OF THIS ARBITRATION PROVISION BY FOLLOWING THE INSTRUCTIONS BELOW.  THERE ARE AND/OR MAY BE LAWSUITS ALLEGING CLASS, COLLECTIVE, COORDINATED, CONSOLIDATED, AND/OR REPRESENTATIVE CLAIMS ON YOUR BEHALF AGAINST US.  IF YOU DO NOT OPT OUT OF THIS ARBITRATION PROVISION AND THEREFORE AGREE TO ARBITRATION WITH US, YOU ARE AGREEING IN ADVANCE, EXCEPT AS OTHERWISE PROVIDED BELOW, THAT YOU WILL NOT PARTICIPATE IN AND, THEREFORE, WILL NOT SEEK OR BE ELIGIBLE TO RECOVER MONETARY OR OTHER RELIEF IN CONNECTION WITH, ANY SUCH CLASS, COLLECTIVE, COORDINATED, CONSOLIDATED, AND/OR REPRESENTATIVE LAWSUIT.  THIS ARBITRATION PROVISION, HOWEVER, WILL ALLOW YOU TO BRING INDIVIDUAL CLAIMS IN ARBITRATION ON YOUR OWN BEHALF.

(D. App. 22, 50-51, 79, 107-08.)  Each agreement also contains a provision for opting out of the arbitration agreement that directs the driver to send an email to a designated email address within 30 days stating an intent to opt out of the arbitration provision.  (D. App. 34, 62, 91, 119.)  It notes that opting out of the arbitration provision of that particular agreement does not affect the validity of any other arbitration agreement that exists.  (D. App. 34, 63, 91, 120.)

Each of the arbitration agreements broadly applies "to any legal dispute, past, present or future, arising out of or related to your relationship with us[2] and any of our agents, employees, executives, officers, investors, shareholders, assigns,

---

[2] The agreements include Uber Technologies, Inc. within the term "us."  (D. App. 9, 36, 64, 93.)

subsidiaries, or parent companies[.]" (D. App. 22, 51, 79-80, 108.)  The arbitration provision states that it applies to "disputes between you and us, or between you and any other entity . . . arising out of or related to . . . the nature of your relationship with us (including, but not limited to, any claim that you are our employee), . . . compensation, minimum wage, expense reimbursement, overtime, . . . and claims arising under the . . . Fair Labor Standards Act[.]"  (D. App. 23, 51-52, 80, 108-09.)

On August 17, 2024, Luckett sent an email to the address designated to receive opt-outs for the 2024 Portier PAA.  (D. App. 4, 122.)  In that email, Luckett stated that he wished to "opt-out of the arbitration agreement to the fullest possible extent."  (D. App. 122.)  Uber records show that Luckett did not opt out of the arbitration provisions in the 2022 Rasier PAA, the 2022 Portier PAA, or the 2024 Schleuder PAA.  (D. App. 5-6.)

**B.      Procedural Background**

Luckett sued Uber in a state court in Dallas County, Texas, on March 25, 2025.  (Removal App. 5.)  On April 1, he filed an amended complaint asserting claims against Uber for violating the Texas Deceptive Trade Practices Act ("DTPA"), unjust enrichment, and violation of the Fair Labor Standards Act ("FLSA").  (Removal App. 13-17.)  Uber removed this action on May 2, 2025, based on the court's federal question jurisdiction under 28 U.S.C. § 1331 and diversity jurisdiction under 28 U.S.C. § 1332(a).  (Dkt. No. 1 at 3.)

Uber has filed a motion to stay this action and compel arbitration. Meanwhile, Luckett filed a motion for summary judgment on May 13, 2025. (Dkt. No. 10 ("P. MSJ").) On June 3, 2025, Uber filed a motion to strike Luckett's motion for summary judgment (Dkt. No. 14), to which Luckett filed a response on June 3 (Dkt. No. 16) and Uber replied on June 17 (Dkt. No. 18). On June 17, Uber also filed a motion to strike Luckett's "Sur-reply" in opposition to Uber's motion to compel arbitration (Dkt. No. 17), to which Luckett filed a response the same day (Dkt. No. 19). Finally, Uber has filed a motion for protective order or, alternatively, a stay pending the outcome of Uber's motion to compel arbitration. (Dkt. No. 20.) Luckett filed a response to that motion as well. (Dkt. No. 21.)

## II. LEGAL STANDARDS

The Federal Arbitration Act ("FAA") requires a federal court to compel arbitration if it concludes there is an enforceable arbitration agreement "evidencing a transaction involving commerce" encompassing the issues in dispute. 9 U.S.C. § 2; *see Clark v. Nordstrom, Inc.*, No. 3:18-CV-2100-D, 2019 WL 3428947, at *2 (N.D. Tex. July 30, 2019) ("The FAA leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." (internal quotation marks omitted)). When considering a motion to compel arbitration, a court employs a two-step inquiry. The court first determines "whether the parties agreed to arbitrate the dispute." *Clark*, 2019 WL 3428947, at *2 (quoting *Webb v.*

*Investacorp, Inc.*, 89 F.3d 252, 258 (5th Cir. 1996)). Assessing whether the parties agreed to arbitrate the dispute, in turn, implicates two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (quoting *Webb*, 89 F.3d at 258). If the court finds that the parties agreed to arbitrate the dispute, it considers at the second step "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims." *Id.* (quoting *Webb*, 89 F.3d at 258). If the court determines that the parties agreed to arbitrate the dispute and there has been no legal constraint foreclosing arbitration, "the court must order the parties to arbitrate their dispute." *Id.* (internal quotation marks omitted).

"The party seeking arbitration has the burden of establishing the existence of an agreement to arbitrate." *Signal Ridge Owners Ass'n, Inc. v. Landmark Am. Ins. Co.*, 657 F. Supp. 3d 866, 872 (N.D. Tex. 2023) (internal quotation marks omitted). "Thereafter, a party seeking to invalidate an arbitration agreement bears the burden of establishing its invalidity." *Id.* (internal quotation marks omitted).

"[W]here the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes." *Clark*, 2019 WL 3428947, at *2 (quoting *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016)). "A delegation clause is 'an agreement to arbitrate threshold issues concerning the arbitration agreement.'" *Id.* (quoting *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010)). "When a delegation clause is

present, a different issue must be addressed: 'Who should have the primary power to decide whether the claim is arbitrable.'" *Id.* (quoting *Kubala*, 830 F.3d at 202 (internal quotation marks omitted)). "Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator." *Id.* (quoting *Kubala*, 830 F.3d at 202). "The presence of a delegation clause obligates the court to 'refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues.'" *Id.* (quoting *Kubala*, 830 F.3d at 202). "When a party seeking arbitration directs the court to a 'purported delegation clause, the court's analysis is limited.'" *Id.* (quoting *Kubala*, 830 F.3d at 202). "If there is a delegation clause, the motion to compel arbitration should be granted in almost all cases." *Fozard v. C.R. England, Inc.*, 243 F. Supp. 3d 789, 793 (N.D. Tex. 2017) (quoting *Kubala*, 830 F.3d at 202).

### III.  ANALYSIS

The FAA controls the analysis applicable to resolving Uber's motion to compel arbitration. As recognized by the parties, the agreements between Luckett and Uber providing for the delivery of transportation services through an internet application in exchange for remuneration clearly implicates a transaction involving commerce. (*See, e.g.*, D. App. 79.) Luckett presents no argument to the contrary. Instead, Luckett argues that he opted out of the arbitration agreement, that the arbitration provisions are unconscionable, and that public policy supports non-enforcement of the arbitration provision. (*See* Resp., Surreply.)

### A. Luckett entered into valid agreements to arbitrate disputes arising out of his relationship with Uber.

At the first step of the analysis, the Court typically considers whether the parties entered into "*any arbitration agreement at all*," putting to the side for the moment whether there is a challenge to enforceability or validity. *See Clark*, 2019 WL 3428947, at *3 (quoting *Kubala*, 830 F.3d at 201). State contract law is used to determine whether a valid agreement to arbitrate exists. *Kubala*, 830 F.3d at 202. Luckett does not dispute that he entered into the relevant PAAs. *See Clark*, 2019 WL 3428947, at *3 (accepting existence of agreement to arbitrate where it is undisputed).

Luckett argues against enforcement of the arbitration agreement on grounds that he opted out of the arbitration provisions. (Surreply at 1.) Luckett and Uber agree that Luckett exercised his right to opt-out of the 2024 Portier PAA's arbitration provisions when he sent an email on August 17, 2024, manifesting his intent to opt out. (D. App. 122; Dkt. No. 8 at 3.) Uber, however, presents evidence that Luckett never opted out of the arbitration provisions of the 2022 Rasier PAA, the 2022 Portier PAA, or the 2024 Schleuder PAA. (D. App. 5-6.) Luckett does not contend otherwise. Additionally, the screenshot Luckett provides evincing his decision to opt out confirms that it was sent to an email address that was monitored "for Portier Arbitration Provision opt outs[.]" (Dkt. No. 8 at 3.)

Uber argues that Luckett's opt-out of the arbitration provisions of the 2024 Portier PAA is immaterial because he was still bound by other arbitration provisions form which he did not opt out. (D. Br. at 12-13.) Specifically, Uber points to the

8

2024 Schleuder PAA, which notified Luckett that "[a]ny opt out of this Arbitration Provision does not affect the validity of any other arbitration agreement between you and us." (D. App. 91.) Additionally, each of the agreements advises that, "[i]f you opt out of this Arbitration Provision and at the time of your receipt of this Agreement you were bound by an existing agreement to arbitrate disputes arising out of or related to your use of our Platform and Driver App, that existing arbitration agreement will remain in full force and effect." (D. App. 34, 63, 91, 120.) Luckett does not address this language directly.

Courts have compelled arbitration of claims in similar circumstances. In *Capriole v. Uber Techs., Inc.*, 460 F. Supp. 3d 919 (N.D. Cal. 2020), for example, a driver who entered into agreements in both 2015 and 2020 accepted materially indistinguishable arbitration provisions in the 2015 but opted out of the arbitration provisions in the 2020 agreement. *Id.* at 927-28. Based on the language noted above that Uber relies on, the court concluded that "[o]pting out of the [later] agreement does not operate to opt him out of the prior . . . agreement." *Id.* at 928. This conclusion is consistent with decisions reached by other courts. *See Singh v. Uber Techs., Inc.*, 67 F.4th 550, 564 (3d Cir. 2023) (relying on same provisions of arbitration agreement to conclude that plaintiffs "remain bound by that agreement notwithstanding their subsequent opt-out"); *Agha v. Uber Techs., Inc.*, 730 F. Supp. 3d 756, 765-66 (N.D. Ill. 2024) ("The Court . . . joins several other courts in concluding that the plaintiffs' subsequent opt-outs cannot undo their previous acceptance of an

9

obligation to arbitrate if the express terms of the opt-out clause provide otherwise."); *Nicholas v. Uber Techs., Inc.*, No. 19-CV-08228-PJH, 2020 WL 4039382, at *6 (N.D. Cal. July 17, 2020).

The parties have entered into agreements to arbitrate their disputes.

**B.     The arbitration agreements contain comprehensive delegation clauses.**

As stated above, a motion to compel arbitration typically requires a court to consider whether the parties' agreement to arbitrate covers the claims at issue. *See Clark*, 2019 WL 3428947, at *2. Its analysis materially changes, however, when the arbitration agreement contains a delegation clause. *See id.* When the agreement contains what might be a delegation clause, the court first assesses whether there is an agreement to arbitrate, as the undersigned did above. "Then the only remaining question is whether the purported delegation clause is in fact a delegation clause— that is, if it evinces an intent to have the arbitrator decide whether a claim must be arbitrated." *Fozard*, 243 F. Supp. 3d at 794.

Uber points the following language from the three accepted arbitration agreements as a delegation clause evincing the parties' intent to have the arbitrator decide threshold issues of arbitrability:

> This Arbitration Provision applies to all claims whether brought by you or us, except as provided below. This Arbitration Provision requires all such claims to be resolved only be an arbitrator through final and binding individual arbitration and not by way of court or jury trial. Except as provided below regarding the Class Action Waiver and Representative Action Waiver, such disputes include without limitation disputes arising out of or relating to the interpretation, application, formation, scope,

> enforceability, waiver, applicability, revocability or validity of this Arbitration Provision or any portion of this Arbitration Provision.

(D. App. 22-23, 51, 80.) Luckett does not specifically dispute this language as constituting a broad delegation clause other than to challenge the arbitration provisions as unconscionable generally. And courts have accepted that this language delegates to the arbitrator challenges to the validity of the arbitration agreement, particularly where, as here, a plaintiff does not challenge the delegation clause specifically. *See, e.g.*, *Hearn v. Uber Techs., Inc.*, No. CV H-21-3465, 2022 WL 20691054, at *6-7 (S.D. Tex. May 27, 2022) ("Because Plaintiff does not challenge the delegation provisions specifically, the Court must treat the delegation provisions as valid and leave any challenge to the validity of the arbitration agreements as a whole for the arbitrator."); *see also Gay v. Manchester Mgmt., LLC*, No. 3:18-CV-1378-D, 2018 WL 5255267, at *5 (N.D. Tex. Oct. 22, 2018) (concluding that similar language "unmistakably illustrates that the parties agreed to delegate 'gateway' issues of arbitrability to the arbitrator and not to the court"). The undersigned agrees that this language creates a valid delegation clause.

Because the arbitration provisions contain language evincing the parties' agreement to have the arbitrator decide threshold issues of arbitrability, it is for the arbitrator, not the court, to determine whether the arbitration provisions are unconscionable and any other gateway issues of arbitrability. *See Gay*, 2018 WL 5255267, at *5-6 (referring unconscionability claims to arbitrator in view of delegation clause).

## IV.  SUMMARY JUDGMENT

Luckett filed a motion for partial summary judgment on May 13, 2025.  (P. MSJ.)  He seeks "summary judgment on the issue of the enforceability of the arbitration clause contained in Uber's Platform Access Agreement."  (P. MSJ at 1.)  Because, as concluded above, Luckett's claims are subject to a valid arbitration clause that is binding on him, he cannot obtain summary judgment relief in this Court.  *See Bautista v. PricewaterhouseCoopers LLP*, No. 3:24-CV-2593-D, 2025 WL 936658, at *4 (N.D. Tex. Mar. 27, 2025) (citing 9 U.S.C. § 3).  Luckett's motion for summary judgment therefore should be denied.

## V.  RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Uber's motion to compel arbitration (Dkt. No. 6) be **GRANTED**, Luckett's Motion for Summary Judgment (Dkt. No. 10) be **DENIED**, and that this action be **STAYED** pending completion of arbitration.  *See* 9 U.S.C. § 3.

**SO RECOMMENDED** on July 2, 2025.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), modified by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).